[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Housing Authority of Norwalk brought this summary process action against Linda Boykins and her daughter, Shalease Mason alleging serious nuisance in violation of General Statutes section 47a-11(g). Shalease Mason failed to appear and judgment of default for failure to appear was entered on November 5, 1990.
The court finds the following facts. On or about September 1, 1983, the plaintiff and the defendant Linda Boykins entered into a written lease for Apartment 3B, Building 21, Roodner Court. Ms. Boykins' children, Trina and Latisha, both minors, are members of her household. Her daughter, Shalease, the co-defendant, was also authorized to reside at the premises. The lease was renewed automatically for successive terms of one month following the expiration of its initial term. Ms. Boykins participated in a recertification process from time to time in which her income and family size were reviewed to determine if any changes had occurred.
On or about February 12, 1990, Shalease Mason was arrested on the plaintiff's premises for possession and sale of narcotics and possession of marijuana. On March 19, 1990, she entered a voluntary plea of guilty and received a prison sentence of three years, execution suspended after one year.
On April 10, 1990 she was again arrested for possession and sale of narcotics on the plaintiff's premises. She entered a voluntary plea to and received a two year sentence to be served consecutively to the earlier sentence. She gave the police her address as 8 Christy Street, Stamford at the time of both arrests. Based on the arrests and convictions, the plaintiff brought this action on September 25, 1990.
Section 47a-11(g) provides that a tenant shall "conduct himself and require other persons on the premises with his consent to conduct themselves in a manner that will not disturb his neighbors' peaceful enjoyment of the premises or constitute a . . . serious nuisance, as defined in section 47a-15."
Section 47a-15(D) defines "serious nuisance" as "using the premises for . . . the illegal sale of drugs."
The statute then continues as follows:
 "(I)f the landlord elects to evict based upon an allegation, pursuant to subsection (g) of section 47a-11, that the tenant failed to require other persons on the premises with his consent to conduct themselves in a CT Page 6151 manner that will not constitute a serious nuisance, and the tenant claims to have had no knowledge of such conduct, then, if the landlord establishes that the premises have been used for the illegal sale of drugs, the burden shall be on the tenant to show that he had no knowledge of the creation of the serious nuisance."
In 47a-1(1) a tenant is defined as the "lessee, sublessee or person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others or as is otherwise defined by law."
Subsection (g) of that statute defines "premises" as ". . . a dwelling unit and the structure of which it is a part and facilities and appurtenances therein and grounds, areas and facilities held out for the use of tenants generally or whose use is promised to the tenant."
In support of the claim that Ms. Boykins consented to her daughter's presence on the premises, Gloria Seed, an occupancy specialist with the Housing Authority testified that it is one of her duties to handle the annual recertification process. She also testified that the procedure to remove an authorized tenant's name from the lease is to submit a Move-Out form provided by the plaintiff. That form requires that the prospective landlord confirm that the authorized tenant has a place to move into and will no longer be a tenant of the Housing Authority.
Ms. Seed did not speak to Ms. Boykins about the necessity for filing a Move-Out form. When Ms. Boykins called Ms. Seed in March 1990 to request that Shalease Mason be removed from the lease, Ms. Seed told her to visit the office and "do it officially." Ms. Seed intended to deal with the subject when Ms. Boykins appeared for the next recertification meeting. Meanwhile, Ms. Seed prepared the recertification form using the information from the earlier form dated April 26, 1989. (Exhibit B). It was she, therefore, not Ms. Boykins who listed Ms. Mason as a tenant on what would have been the 1990 recertification form. (Exhibit C)
Ms. Boykins was aware in 1989 that Shalease was involved with drugs. She attempted to speak to her daughter about the problem. She would go down to where Shalease was "hanging out" to talk with her and to try to convince her to leave the area. Shalease would occasionally storm off or become upset and say "I'm not doing anything." Mrs. Boykins knew the plaintiff's policy with regard to evicting families of tenants involved in the sale of drugs on Housing Authority premises. Therefore, she contacted Ms. Mason's grandparents to request that they take her in to live with them. Leroy Mason, Sr. agreed to have his granddaughter live with his family at 8 Christy Street if she "lived by his rules." Ms. Mason gradually moved in with his household around April 1989 but she CT Page 6152 moved out before her first arrest. Mr. Mason did not know where she went. She told him she had an apartment in Bridgeport and had a job but he had no knowledge of an address or an employer. Her mother signed the April 26, 1989 recertification form which lists Ms. Mason as an authorized tenant. However, the names on the form were filled in by Ms. Seed.
At the time of the first arrest, Ms. Boykins refused to post bond for her daughter. After serving a portion of her sentence in jail, Ms. Mason was released on the Supervised Home Release program to finish serving her sentence for the first drug offense. The program requires a sponsor who will accept the offender into her home. Ms. Mason gave her address as Roodner Court. Parole Officer Emielita was assigned to her case. His records regarding Ms. Mason were at Niantic at the time of trial but he had reviewed his notes one month earlier and testified from his review and his recollection. He admitted that he based ten percent of his testimony on his notes and ninety percent from his memory. He had visited Roodner Court when Ms. Boykins was not at home and had left his business card. Ms. Boykins called him in response. He spoke with her by telephone but provided no written instructions concerning sponsorship. He made no home visit to Roodner Court and had one meeting with Ms. Mason before she was arrested for the second drug offense seven days after she was released. Mr. Emielita never saw her at Roodner Court nor spoke with her by telephone there. Ms. Boykins denied that her daughter lived at Roodner Court; she confirmed that she sponsored her daughter but was unaware that sponsorship meant that her daughter live with her.
The plaintiff also called Parole Supervisor Carlos Perez as a witness. He is the Supervisor of Parole Officer Clifford who was unavailable at the time of trial and presented that officer's notes concerning Ms. Mason's release in 1991. Without Mr. Clifford's presence at trial for cross-examination, those notes were not probative with regard to the issue of Ms. Boykins' consent to Ms. Mason's presence in her home.
The court finds that there is insufficient evidence that Ms. Boykins consented to her daughter's presence at the Roodner Court apartment or that she failed to require Shalease Mason to behave in a manner that did not constitute a serious nuisance. It was clear throughout her testimony that Ms. Boykins attempted to place her daughter in a more structured setting outside of the Roodner Court environment by arranging for Ms. Mason to live with Mr. Christy and his family before the first arrest. Ms. Boykins was well aware of the Housing Authority's policy regarding eviction of families where a member engaged in activities constituting serious nuisance. She was anxious to protect her other children from losing their home. Her failure to comply with certain procedural requirements can be traced to her failure to have been properly informed both with CT Page 6153 regard to having to provide a Move-Out form to the plaintiff, and understanding the full implications of sponsorship of her daughter under the Supervised Home Release program.
Accordingly judgment is rendered for the defendant Linda Boykins.
Leheny, J.